IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| ROBERT WILLIS SLAUGHTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 322-176 |
| | ) | |
| KILOLO KIJAKAZI, Acting Commissioner | ) | |
| of Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

_____

Plaintiff appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that Plaintiff's motion for judgment on the pleadings be **DENIED**, (doc. no. 21), the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I. **BACKGROUND**

Plaintiff protectively applied for SSI on April 18, 2019, and he alleged a disability onset date of March 31, 2019. Tr. ("R."), pp. 12, 91, 208, 331. Plaintiff was thirty-one years old on March 31, 2019, and was thirty-four years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 9, 90, 208. Plaintiff's alleged disabilities are based upon alcohol abuse and dependence; stimulant abuse with stimulant-induced psychosis;

psychotic disorder with hallucinations; severe and recurrent major depressive disorder with psychotic symptoms; emotional displacement disorder; attention-deficit disorder; and bipolar disorder.  R. 91, 236.  Plaintiff reported completing school through the tenth grade, R. 237, and prior to his alleged disability date, accrued a history of past work that included construction and other jobs requiring manual labor, although none of the jobs qualified as past relevant work under the applicable regulations, R. 32, 237, 252.

The Social Security Administration denied Plaintiff's application initially and on reconsideration.  R. 70-113.  Plaintiff requested a hearing before an ALJ, R. 138-39, and ALJ Antony Saragas held a hearing on May 5, 2022, R. 41.  Represented by counsel, Plaintiff appeared and testified, as did a vocational expert ("VE") Rena Serkin.  R. 41-69.  On July 6, 2022, the ALJ issued a decision finding Plaintiff not disabled.  R. 12-33.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 31, 2019, the alleged onset date.  (20 C.F.R. §§ 416.920(b) and 20 C.F.R. § 416.971 *et seq*.).

2. The claimant has the following severe impairments:  obesity; bipolar, anxiety, and depressive disorders; schizoaffective and personality disorders; attention deficit, learning, and reading disorders; methamphetamine and alcohol abuse disorders, in recent remission (20 CFR § 416.920(c)).

   Including the claimant's substance use, the severity of the claimant's impairments met the criteria of section 12.03 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 416.920(d), 416.925).

   If the claimant stopped the substance use, the remaining limitations would cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would still have the severe impairments or combination of impairments noted in the above Findings (20 CFR § 416.922).

3. If the claimant stopped the substance use, the claimant would not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 416.994(b)(5)(i)).

4. After careful consideration of the entire record, the undersigned finds that, if the claimant stopped the substance use, the claimant has the residual functional capacity [("RFC")] to perform medium work as defined in 20 CFR § 416.967(c) except he can frequently stoop, kneel, crouch, crawl, and climb ramps and stairs. He should not climb ladders, ropes, or scaffolds or have exposure to workplace hazards such as moving mechanical parts or unprotected heights. He should not perform commercial driving. He is limited to simple, routine, repetitive tasks, and instructions. He is limited to occasional interaction with coworkers, supervisors, and the public. He can tolerate occasional changes in workplace environment and routine. He should not perform any assembly line, piecework, or high production quota work.

5. The claimant can perform past relevant work (20 CFR 416.965).[1]  If the claimant stopped the substance use, considering the claimant's age, education, work experience, and [RFC], there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

6. The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use (20 CFR §§ 416.920(g) and 416.935). Because the substance use disorder is a contributing factor material to the determination of disability, the claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

R. 15-33.

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review, 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting remand, arguing the ALJ failed to apply the correct legal standards to the medical evidence and failed to build a logical bridge from the evidence of record to the RFC. (See doc. no. 22, "Pl.'s Br.") The Commissioner maintains the decision to deny Plaintiff benefits is supported by substantial evidence and should therefore be

---

[1] The Court agrees with the parties that this finding was a scrivener's error, as the ALJ "provided no discussion regarding Plaintiff's past relevant work and advised the vocational expert (VE) during the hearing that there was no past relevant work." Comm'r's Br., p. 3; see also Pl.'s Br., p. 3 n.2.

affirmed.  (See doc. no. 24, "Comm'r's Br.")  In his reply brief, Plaintiff also contends that newly discovered material evidence warrants remand under sentence six of § 405(g).  (See doc. no. 27.)

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).   When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance:  '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards

other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

Plaintiff argues the ALJ failed to properly follow the guidelines in 20 C.F.R. § 404.1520c and § 416.920c when assessing the persuasiveness of Plaintiff's medical evidence.[2] In particular, Plaintiff contends the ALJ improperly determined the persuasiveness of the opinion of treating physician Dr. Mark Dunlap, M.D.,[3] and the administrative medical findings of State Agency consulting psychologists Dr. Ruth Ann Lyman, Ph.D., and Dr. Ryan Mendoza, Psy.D. Pl.'s Br., pp. 4-17.  Plaintiff also contends the ALJ failed to adequately consider Plaintiff's mental

---

[2] Because Plaintiff applied for SSI only, the relevant regulation is 20 C.F.R. § 416.920c.  However, the guidelines in § 404.1520c, applicable to Disability Insurance Benefits, and § 416.920c mirror each other.

[3] The Court notes a discrepancy in the record which suggests "Dr. Dunlap" is a misnomer, and the medical opinion at issue was provided by Dr. Durden.  R. 320, 990.  However, the ALJ referred to the doctor providing the relevant medical opinion at Exhibit 12F as Dr. Dunlap in his decision, see R. 20, 31, the parties did the same in briefing, see Pl.'s Br., pp. 1, 6-13; Comm'r's Br., pp. 9-15, and there appears to be no confusion that the opinion of Dr. Dunlap was the opinion of Plaintiff's treating physician, see R. 20, 31; Pl.'s Br., pp. 1, 6-12; Comm'r's Br., pp. 9 (citing portions of the ALJ decision referring to Dr. Dunlap as having "a treating relationship with the claimant").  As the misnomer is not material to the Court's analysis, the Court adopts the apparent misnomer in this Report and Recommendation for consistency and refers to the opinions and records signed by Dr. Durden as provided by Dr. Dunlap.

limitations in the RFC assessment.  Id. at 17-25.  The Commissioner maintains the ALJ's decision

is supported by substantial evidence and should be affirmed.

### A.      Regulations for Evaluating Medical Opinions for Claims Filed After March 27, 2017

Because Plaintiff filed his SSI application on April 18, 2019, the ALJ assessed the

medical evidence in the record under recently revised regulations.  "For claims filed on or after

March 27, 2017, the ALJ will not defer or give any specific evidentiary weight, including

controlling weight to any medical opinion(s) or prior administrative medical finding(s).  This

regulation abrogated our earlier precedents applying the treating-physician rule, which

required good cause to discount a treating physician's opinion."  Sturdivant v. Soc. Sec.

Admin., Comm'r, No. 22-13952, 2023 WL 3526609, at *3 (11th Cir. May 18, 2023) (per

curiam) (citations and internal quotes omitted); 20 C.F.R. § 416.920c(a) (explaining ALJ does

not "defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [the claimant's own]

medical sources"); see also Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 897 (11th Cir.

2022) (explaining 2017 revision eliminated the treating-physician rule and prohibits ALJs from

"defer[ring] or giv[ing] any specific evidentiary weight, including controlling weight to any

medical opinion(s)" (citations omitted)).    Elimination of the treating source rule is intended to

remove "confusion about a hierarchy of medical sources and instead focus adjudication" on the

evidence, as well as discourage courts from reweighing the evidence in violation of the deferential

substantial evidence standard of review.  Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017).

The ALJ must now determine the persuasiveness of medical opinions by considering

supportability, consistency, nature and length of the treatment relationship, specialization, and

other miscellaneous factors.  <u>Harner</u>, 38 F.4th at 897; 20 C.F.R. § 416.920c(c)(1)-(c)(5).  Because supportability and consistency are the most important factors, the ALJ must articulate how these factors were considered for a medical source's opinions, but an ALJ is not required to articulate consideration of the remaining factors.  <u>See</u> <u>Sturdivant</u>, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(b)(2).  In assessing supportability and consistency, the ALJ's analysis focuses on whether the medical source's opinion is supported by the objective medical evidence and supporting explanations and consistent with the other medical and nonmedical sources in the record.  <u>See</u> <u>Sturdivant</u>, 2023 WL 3526609, at *3; 20 C.F.R. § 416.920c(c)(1)-(c)(2).

Furthermore, the ALJ need not articulate how it considered the factors for each medical opinion or prior administrative medical finding from one medical source individually.  <u>Freyhagen v. Comm'r of Soc. Sec. Admin.</u>, No. 318-CV-1108, 2019 WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (citing 20 C.F.R. § 404.1520c(b)(1) (2017)).  "Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), [the Commissioner] will articulate how [it] considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis."  20 C.F.R. §§ 416.920c(b)(1) (2017) & 404.1520c(b)(1) (2017).  Courts recognize the new regulations erect a framework that is highly deferential to the Commissioner.  <u>See</u> <u>Cook v. Comm'r of Soc. Sec.</u>, No. 620-cv-1197, 2021 WL 1565832, at *4 (M.D. Fla. Apr. 6, 2021), *adopted by* <u>Cook v. Comm'r of Soc. Sec.</u>, No. 620-cv-1197, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021) (affirming ALJ's rejection of treating source opinion because inconsistent and unsupported by record); <u>Bunn v. Soc. Sec. Admin., Comm'r,</u> No. 220-CV-218, 2021 WL 1171537, at *9 (N.D. Ala. Mar. 29, 2021) (same).

**B.      The ALJ Applied the Correct Legal Standards to the Analysis of the Contested Medical Evidence**

**1.      Dr. Dunlap's Opinion**

Dr. Dunlap provided an opinion after examining Plaintiff in September 2021.  R. 988-990.  The ALJ discredited Dr. Dunlap's opinion, finding it only "partially persuasive."  R. 20, 31.  The ALJ found Dr. Dunlap's opinion less persuasive due to its issuance prior to other records following Plaintiff's sobriety and because the opinion misstated the date by which Plaintiff stopped using substances.  Id.  To the extent Dr. Dunlap opined on Plaintiff's ability to perform work, under the regulations the ALJ must "explain how [he] considered the supportability and consistency factors" in his decision.  See 20 C.F.R. §§ 404.1520c(b)(2); 416.920c(b)(2).  Here, the ALJ did not directly state how he evaluated the consistency or supportability of Dr. Dunlap's opinion.  See R. 20, 31.

The Commissioner argues even if the ALJ failed to directly state the consistency and supportability factors of Dr. Dunlap's opinion, the ALJ is not required to use "magic language," see Comm'r Br., p. 14, the ALJ implicitly addressed these factors, and substantial evidence supports the ALJ's determination that the record as a whole is inconsistent with Dr. Dunlap's opinion, id. at 9-15.  The Court finds the ALJ applied the correct legal standards when analyzing Dr. Dunlap's opinion because there was sufficient implicit discussion of both consistency and supportability in the ALJ's decision.

"Consistency" under the regulations refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 404.1520c(c)(2).  "Supportability" under the regulations refers to the principle that "[t]he more relevant the

objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). "Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record." Lewno v. Kijakazi, No. 821-CV-1334, 2022 WL 3999282, at *4 (M.D. Fla. Sept. 1, 2022).

Here, the ALJ provided a lengthy and sifting analysis of Plaintiff's medical history before evaluating Dr. Dunlap's opinion rendered in September 2021. After summarizing Dr. Dunlap's opinion, the ALJ stated:

> The undersigned finds this opinion partially persuasive. Dr. Dunlap has a treating relationship with the claimant. Further, the records do support the finding that the claimant's polysubstance abuse aggravated his symptoms. However, treatment records in June 2021 showed the claimant was still using methamphetamine. The records and the claimant's testimony show the claimant has been abstinent from substances since July 2021. The treatment records after July 2021 showed that the claimant's overall functioning improved when he was abstinent from methamphetamines and was compliant with his medication regimen. As discussed in greater detail above, the records as a whole showed that the claimant would have no more than moderate limitations in his ability to perform basic mental work activities. For these reasons, the undersigned finds the opinion of Dr. Dunlap partially persuasive.

R. 31 (citations omitted); see also R. 20. The phrase "[a]s discussed in greater detail above," is critical because the discussion preceding this quote contains ample analysis of Plaintiff's records which demonstrate the consistency and supportability of Dr. Dunlap's opinion.

Regarding supportability, the record contains substantial documentation of Plaintiff's visits with Dr. Dunlap dating back to March 2019, R. 1017, through May 2022, R. 1123, shortly before the ALJ issued his decision in July 2022. However, because "[t]he

supportability factor deals with the extent to which a medical source has articulated support for the source's own opinion," Lewno, 2022 WL 3999282, at *5, only the ALJ's discussion of Dr. Dunlap's records through September 2021, when Dr. Dunlap issued the opinion at issue, is relevant.

In discussing Plaintiff's medical history from March 2019 to September 2021, the ALJ cited to medical records provided by Dr. Dunlap or other practitioners at his clinic no less than twenty-three times.  See R. 25-28 (citing 15F (R. 1012-1122)).  In doing so, the ALJ pointed out that Dr. Dunlap's own records reflected a positive drug screen for methamphetamine and "continued drug use" in May 2021.  R. 27 (citing 15F, 93-94 (R. 1104-05)).  Moreover, in June 2021, the ALJ noted Dr. Dunlap provided follow-up care to Plaintiff after Plaintiff spent nine days in the hospital for "methamphetamine overuse."  R. 27 (citing 15F, 89 (R. 1100)).  The ALJ's discussion of Plaintiff's documented drug use by Dr. Dunlap in the months of May and June 2021 speak directly to the supportability of Dr. Dunlap's opinion, which stated in September 2021, "last meth use 5/21" and "[a]bstinent from substances . . . last documented use 5/21."  R. 1000.  The ALJ found, in light of Dr. Dunlap's own records, that his claim Plaintiff was sober as of May 2021 was not supported – and was, in fact, directly contradicted – by Plaintiff's medical records provided by Dr. Dunlap.  R. 31.  Specifically, the ALJ stated, "Dr. Dunlap further noted that the claimant's last documented use was in May 2021. . . . However, treatment records in June 2021 showed the claimant was still using methamphetamine.  The records and the claimant's testimony show the claimant has been abstinent from substances since July 2021."  R. 31 (citing 12F (R. 988-990); 11F, 13-181 (R. 817-985)).

The ALJ further discussed the supportability of Dr. Dunlap's decision, stating:

> [T]he records do support the finding that the claimant's polysubstance abuse aggravated his symptoms. However, treatment records in June 2021 showed the claimant was still using methamphetamine. The records and the claimant's testimony show the claimant has been abstinent from substances since July 2021. The treatment records after July 2021 showed that the claimant's overall functioning improved when he was abstinent from methamphetamines and was compliant with his medication regimen.

R. 31 (citations omitted). Here, the ALJ addressed the supportability of Dr. Dunlap's opinion in two ways. First, he directly discussed supportability by favorably noting Dr. Dunlap's opinion that polysubstance abuse aggravated Plaintiff's symptoms was supported by the record. Second, he implicitly addressed supportability by discussing that Dr. Dunlap's opinion failed to account for his own records documenting an improvement in Plaintiff's symptoms between July 2021, Plaintiff's established sobriety date,[4] and September 2021, the date Dr. Dunlap issued his opinion. See R. 31. In his extensive discussion of the record as a whole, the ALJ cited and discussed Dr. Dunlap's treatment records during this time period, summarizing Dr. Dunlap's records as follows:

> In July 2021, the claimant reported feeling much better, but that his sleep continued to be mildly erratic. The claimant agreed to a trial of Vistaril. His mental status examination showed that he had an anxious mood, but his insight and judgment were fair, and his memory was good. Similarly in August 2021, the claimant reported doing better. He reported stopping Trazadone due to side effects. The claimant was noted to have a better affect, but was still distractable. The claimant's mental status examination showed that he was anxious, but his insight and judgment were fair, he was of average intelligence, and his memory was good.

R. 27-28 (citing 15F, 76-83 (R. 1087-94)). Thus, the ALJ's finding that Dr. Dunlap misstated Plaintiff's date of sobriety, coupled with Dr. Dunlap's opinion that "long term substance use

---

[4] The distinction between records documenting Plaintiff's condition before sobriety and following sobriety is significant because the Contract with America Advancement Act of 1996 "amended the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled." Doughty v. Apfel, 245 F.3d 1274, 1275 (11th Cir. 2001); see also 42 U.S.C. §§ 423(d)(2)(C); 20 C.F.R. § 416.935.

had worsened his underlying bipolar disorder," as well as Dr. Dunlap's failure to address his own records documenting an improvement in Plaintiff's symptoms post-sobriety, all reflect the ALJ addressing the supportability factor.

Regarding consistency, the ALJ's extensive review of the record coupled with his discussion of Dr. Dunlap's opinion demonstrates the ALJ sufficiently addressed the consistency factor.  As discussed above, Dr. Dunlap's opinion failed to account for his own treatment records which reflect that Plaintiff was sober as of July 2021, not May 2021 as Dr. Dunlap's opinion stated.  This failure reflects both supportability and consistency, as Dr. Dunlap's opinion was not even consistent with his own treatment records.  Moreover, the ALJ's observation that "Dr. Dunlap noted that the claimant was abstinence [sic] from substances, . . . the claimant's last documented use was in May 2021," but "[t]he records and the claimant's testimony show the claimant has been abstinent from substances since July 2021" demonstrate that Dr. Dunlap's opinion was inconsistent with the other record medical evidence, as well as Dr. Dunlap's own records.  R. 31.  In addition to citing Dr. Dunlap's own records, the ALJ reviewed and cited hospital records from a June 2021 admission where Plaintiff was documented to have used methamphetamine that month.  See id. (citing 11F, 13-181 (R. 817-985)); see also R. 875 (documenting, on June 16, 2021, Plaintiff tested positive for methamphetamine use, "reports he has been using methamphetamine over the last few weeks," and reported last use of methamphetamine six days prior).  Thus, the ALJ noted in his discussion of the record that several sources reflect the inconsistency of Dr. Dunlap's statement that Plaintiff was sober in May 2021.

The ALJ also documents the inconsistency of Dr. Dunlap's opinion in his discussion of the record evidence, including Dr. Dunlap's own treatment records, post-dating the medical

opinion at issue.  Discussing Plaintiff's condition in the time following Dr. Dunlap's opinion, the ALJ stated:

> In October 2021, the claimant was observed to be slightly better with each visit. The claimant's medications were increased due to continued symptoms of depression.  The claimant's mental status examination showed that he had a depressed mood, but was otherwise oriented, his thought content was goal directed, and his memory was good.  In November 2021, the claimant was able to sit calmly and discuss the possibility of jobs.  The claimant and his mother both reported that he was doing better.  His mental status examination showed that he had a depressed mood, but was otherwise fully oriented, his psychomotor activity was normal, he had normal intelligence and his memory was good. Subsequent appointments showed the claimant reported that his hallucinations were stable, but that he was isolating more.  The claimant's mental status examination showed that he had a depressed mood and a flat affect; however, he was fully oriented, his thought content were appropriate, his judgment and insight were fair, and his memory was good.
>
> Treatment records in early 2022, showed the claimant reported that his medications were working well.  His mental status examination showed that he had a depressed mood, but that he was otherwise fully oriented, his thought process was goal directed and his memory was good.  In February 2022, the claimant appeared sedated.  The claimant's mother reported that she felt his [K]lonopin was too strong so they had been breaking them in half.  The claimant reported that his hallucinations persisted, but that they were better.  His mental status examination showed that he had a depressed mood, but that he was fully oriented, his thought process was goal directed, his judgment was fair, and his memory was good.  Subsequent appointments showed that the claimant reported experiencing poor motivation and fatigue.  The claimant's Prozac was increased to help provide better control of his symptoms.  The claimant's mental status examination showed that he had a depressed mood and a flat affect, but that he was otherwise fully oriented, his thought process was goal directed, his insight and judgement were fair, and his memory was good.  In May 2022, the claimant reported that he was doing well mentally.  The claimant's mental status examination showed that he continued to have a depressed mood, but was otherwise fully oriented, his thought content was appropriate, his insight and judgment were fair, and his memory was good.

R. 28 (citations omitted).  Throughout this excerpted discussion, the ALJ cited to Dr. Dunlap's treatment records at the end of each sentence for a total of nineteen references spanning eight months of treatment records.  See R. 1012-78, 1123-41.

Moreover, when discussing the persuasiveness of Dr. Dunlap's opinion, the ALJ stated, "treatment records after July 2021 showed [Plaintiff]'s overall functioning improved when he was abstinent from methamphetamines and was compliant with his medication regimen . . . . the records as a whole showed [Plaintiff] would have no more than moderate limitations in his ability to perform basic mental work activities." R. 31. This robust discussion of Plaintiff's condition in the months following Dr. Dunlap's September 2021 opinion demonstrates Dr. Dunlap's opinion of Plaintiff's limitations was inconsistent with subsequent evaluations and thus only "partially persuasive" for purposes of formulating Plaintiff's RFC. Id.; see also § 416.920c(c)(5) ("[W]e will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive."). The ALJ is not required to explicitly connect every piece of evidence that is found to be inconsistent with a specific opinion or to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review. Gogel v. Comm'r of Soc. Sec., Case No. 220-cv-366, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) (citing Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005), and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)).

The Court has ample information to conduct meaningful judicial review and considering the ALJ's analysis as a whole, the ALJ sufficiently considered and discussed the supportability and consistency of Dr. Dunlap's September 2021 medical opinion. Specifically, the ALJ's opinion addressed supportability by discussing Dr. Dunlap's misrepresentation of Plaintiff's date of sobriety, opinion that "long term substance use had worsened his underlying bipolar disorder," and failure to address his own records documenting an improvement in Plaintiff's symptoms between July and September 2021. As to consistency, the ALJ addressed

inconsistencies between Dr. Dunlap's medical opinion and the record as a whole by discussing Dr. Dunlap's misrepresentation of Plaintiff's date of sobriety and the vast array of medical documentation provided after Dr. Dunlap's opinion which showed a marked improvement in Plaintiff's condition as his period of sobriety increased.  See Ohneck v. Comm'r, Soc. Sec. Admin., No. 22-13984, 2023 WL 8946613, at *3 (11th Cir. Dec. 28, 2023) ("As to consistency, the ALJ again pointed to the record as a whole including [the doctor]'s treatment notes and the opinions of other physicians.").

While the ALJ may not have explicitly used the terms consistency and supportability in his discussion of Dr. Dunlap's opinion, "there are no magic words to state with particularity the weight given to medical opinions or the reasons for discounting them.  What matters is whether the ALJ 'state[s] with at least some measure of clarity the grounds for his [or her] decision.'" Raper v. Comm'r of Soc. Sec., No. 22-11103, 2024 WL 24933, at *10, n.14 (11th Cir. Jan. 3, 2024) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see also Thaxton v. Kijakazi, No. 120-CV-616, 2022 WL 983156, at *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record."); Lewno, 2022 WL 3999282, at *5.  Here, the ALJ provided sufficient clarity as to the grounds for finding Dr. Dunlap's opinion only partially persuasive.  In sum, the ALJ properly considered Dr. Dunlap's opinion and substantial evidence supports the ALJ's decision to only partially credit Dr. Dunlap's opinion.

### 2. Dr. Lyman and Dr. Mendoza's Prior Administrative Medical Findings

Ruth Ann Lyman, Ph.D., and Ryan Mendoza, Psy.D., provided medical opinions at the initial and reconsideration administrative levels, respectively.  R. 80-87 (Dr. Lyman), 100-110 (Dr.

Mendoza).  Although Dr. Mendoza's opinion was provided later than Dr. Lyman's, and thus Dr. Mendoza reviewed slightly more documentation before issuing his opinion, Dr. Lyman and Dr. Mendoza's opinions were otherwise identical.  Compare R. 80-87 with R. 100-110.  Notably, Dr. Lyman's opinion was issued October 30, 2019, R. 87, while Dr. Mendoza's opinion was issued August 3, 2021, R. 110.  The last-dated documentation Dr. Mendoza reviewed in Plaintiff's medical history was from June 24, 2021, when Plaintiff was hospitalized for methamphetamine use as discussed *supra*.  See R. 103.  Thus, all of the documentation considered by Dr. Lyman and Dr. Mendoza concerned the period of time before the sobriety date when Plaintiff was using methamphetamine, which is significant because the ALJ was required to consider whether Plaintiff was disabled notwithstanding drug or alcohol use, and could only find Plaintiff disabled if he was "disabled independent of [his] drug addiction or alcoholism and . . . [his] drug addiction or alcoholism is not a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(b)(ii); see also McMahon v. Comm'r, Soc. Sec. Admin., 583 F. App'x 886, 891, 893-94 (11th Cir. 2014).

Dr. Lyman and Dr. Mendoza stated Plaintiff was "markedly limited" in his "ability to respond appropriately to changes in the work setting," "unable to adapt to routine changes or stressors, or respond appropriately to directions from others," "unable to adapt to new situations at work," not "suited for work with public," and "would do best in a work environment with low social demands." R. 86, 109-110.  Plaintiff argues "in the ultimate RFC assessment, the ALJ failed to include any of the above limitations opined by Drs. Lyman and Mendoza."  Pl.'s Br., p. 14.  Like Dr. Dunlap's opinion, the ALJ found Dr. Lyman and Dr. Mendoza's opinions "partially persuasive."  R. 19-20, 29-30.

In the ALJ's discussion of Dr. Lyman and Dr. Mendoza's opinions, he states their:

> [O]pinion[s] [are] not based on a full review of the record.  As discussed in
> greater detail above, the records as a whole showed that the claimant would have
> no more than moderate limitations in his ability to perform basic work activities.
> . . . Additionally, the records showed that when the claimant was abstinent from
> methamphetamines and compliant with his medication regimen, his mental
> status examinations and overall functioning improved.  For these reasons, the
> undersigned finds the opinion[s] of [Dr. Lyman and] Dr. Mendoza partially
> persuasive.

R. 29-30.  As Respondent argues, "[t]he ALJ decision makes clear that while Plaintiff may

have had the significant limitations the State agency consultants assessed when he was using

methamphetamine, the medical records after his sobriety do not support the same limitations."

Comm'r's Br., p. 15 (citing R. 19-20, 29-30).  Thus, the ALJ did not include the limitations

described by Dr. Lyman and Dr. Mendoza in the RFC assessment because those limitations

reflected Plaintiff's impairments while he was using methamphetamine.  Because these

limitations were not supported by the record evidence after Plaintiff stopped using

methamphetamine in July 2021, they were not "remaining limitations" and could not be

included in the RFC pursuant to 20 C.F.R. § 416.935.

In sum, the ALJ's decision not to include the outdated, pre-sobriety limitations

described by Dr. Lyman and Dr. Mendoza was consistent with the regulations the ALJ was

required to apply, as those limitations did not reflect Plaintiff's ability to function during

sobriety.  See Glass v. Colvin, No. 515-CV-2115, 2017 WL 1164898, at *7 (N.D. Ala. Mar.

29, 2017) ("[P]laintiff has not demonstrated that Dr. Rogers' evaluation, which was conducted

on September 28, 2012, reflected his ability to function during a period of sobriety.").

Plaintiff also argues that the ALJ improperly weighed Dr. Lyman and Dr. Mendoza's

opinions by cherry-picking evidence from the Function Report regarding Plaintiff's ability to

drive and mow the grass, Pl.'s Br., pp. 14-17, "because the record contains evidence

undermining the ALJ's ultimate decision.  This argument suggests there is a plethora of

evidence . . . that the ALJ ignored.  The record does not support this premise."  <u>Baker v.</u> <u>Kijakazi</u>, No. 122-CV-110, 2023 WL 3963814, at *3 (M.D. Ala. June 12, 2023).  Again, the ALJ was required to determine Plaintiff's limitations in the absence of substance use.  <u>See</u> 20 C.F.R. § 416.935.  Thus, the ALJ reviewed the Function Report, which was completed by Plaintiff on September 13, 2019, R. 282, with the understanding that the limitations identified therein had to be considered in the context of Plaintiff's documented substance use during that time.  While Plaintiff takes issue with the ALJ's failure to discuss particular details from Plaintiff's Function Report, the ALJ is not required to explicitly connect every piece of evidence that is found to be inconsistent with a specific opinion or to discuss every piece of evidence so long as the Court is able to conduct meaningful judicial review.  <u>Gogel</u>, 2021 WL 4261218, at *9 (citing <u>Dyer</u>, 395 F.3d at 1211, and 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1)).

Considering the ALJ's decision as a whole, the ALJ utilized relevant portions of the Function Report to the extent it was consistent with Plaintiff's post-sobriety medical records and other record evidence.  <u>See</u> R. 20-22, 29-30.  When paired with the overall discussion of Plaintiff's limitations, it is clear the ALJ did not "cherry-pick" driving and mowing the lawn, as he considered all types of activities from Plaintiff's Function Report when determining Plaintiff's limitations.  <u>See id.</u> (discussing Plaintiff's self-reported problems with memory, understanding, and instructions; need for reminders to care for personal needs, including medications; problems getting along with others, concentration, and completing tasks; ability to cut grass; and tolerance of stress and changes to routine from the Function Report).  Although Plaintiff is correct that "[t]he Eleventh Circuit has noted that participation in these types of everyday activities does not disqualify a claimant from disability," Pl.'s Br., p. 17

(citing Lewis, 125 F.3d at 1441), Plaintiff has failed to demonstrate the ALJ's decision to discredit Dr. Lyman and Dr. Mendoza's opinions was not based on substantial evidence, particularly where the record is replete with "objective findings constitut[ing] substantial evidence that the ALJ relied on to discredit" Dr. Lyman and Dr. Mendoza's opinions, Baker, 2023 WL 3963814, at *3.

The ALJ clearly addressed the inconsistency of Dr. Lyman and Dr. Mendoza's opinions with the record evidence pre-dating and post-dating Plaintiff's sobriety before finding them only partially persuasive. The ALJ applied proper legal standards to determine that Dr. Lyman and Dr. Mendoza's opinions were only "partially persuasive" and this finding is supported by substantial evidence in the record.

### C.      The RFC Is Supported by Substantial Evidence

#### 1.      Step Four Framework for Formulating Plaintiff's RFC

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing and pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating

dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir. 2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).

### 2.    The ALJ Included Plaintiff's Mental Impairments in the RFC

Plaintiff argues the ALJ failed to consider his own finding that Plaintiff has several severe mental impairments, including "bipolar, anxiety, and depressive disorders; schizoaffective and personality disorders; attention deficit, learning, and reading disorders; and methamphetamine and alcohol abuse disorders, in recent remission" when formulating the RFC. R. 16. The ALJ found, in relevant part,

> the claimant has the [RFC] to perform medium work as defined in 20 CFR [§] 416.967(c) except he . . . is limited to simple, routine, repetitive tasks, and instructions. He is limited to occasional interaction with coworkers, supervisors, and the public. He can tolerate occasional changes in workplace environment and routine. He should not perform any assembly line, piecework, or high production quota work in the ability to interact with others, concentrate, persist, and maintain pace.

R. 23-24. After reviewing Plaintiff's medical records, primarily those related to his severe mental impairments, for five pages, see R. 24-28, the ALJ further stated:

> The [RFC] assessment accounts for the claimant's bipolar, anxiety, and depressive disorders; schizoaffective and personality disorders; attention deficit, learning, and reading disorders; methamphetamine and alcohol abuse disorders, in recent remission by limiting him to simple, routine, repetitive tasks, and instructions. The [RFC] assessment further limits him to occasional interaction with coworkers, supervisors, and the public. Additionally, he can tolerate occasional changes in workplace environment and routine. Lastly, he should not perform any assembly line, piecework, or high production quota work.

R. 28-29.

After a thorough review of the record, the ALJ limited Plaintiff to simple, routine, repetitive tasks and instructions, occasional interaction with others, occasional changes in workplace

environment and routine, and precluded assembly line, piecework, or high production quota work. These limitations represent wide-ranging accommodations of Plaintiff's various impairments as those impairments manifest when Plaintiff is abstinent from alcohol and drugs. These limitations sufficiently address Plaintiff's impairments, and the ALJ's analysis here is significantly more thorough and involved than in similar cases where the ALJ's formulation of an RFC in relation to severe mental impairments was found deficient. See Hinson v. Kijakazi, No. 320-CV-737, 2023 WL 2702557, at *1 (M.D. Ala. Mar. 29, 2023) (affirming where ALJ found severe impairments of obesity, major depressive disorder, recurrent episode, with psychotic features, anxiety disorder, and stimulant use disorder, and limited the RFC to routine, repetitive work with social interaction limitations); Fratilla v. Kljakazl, No. 820-CV-1126, 2021 WL 8945615, at *5 (M.D. Fla. Sept. 10, 2021) ("Despite [claimant]'s severe mental impairments [of neurocognitive disorder and generalized anxiety disorder], the ALJ properly found [the claimant] could properly perform unskilled work based on the examinations and generally normal mental status findings."). Cf. Trayla T. v. Comm'r, Soc. Sec. Admin., No. 219-CV-274, 2021 WL 9666848, at *3 (N.D. Ga. Mar. 26, 2021) (remanding where ALJ found severe mental impairments of depressive disorder, PTSD, and schizophrenia, but did not address how claimant would respond to the stress of the work environment at all). Therefore, the ALJ properly accounted for Plaintiff's severe mental impairments in his RFC assessment and made no legal error.

Plaintiff also argues the ALJ erred by failing to discuss the episodic nature of Plaintiff's bipolar disorder when formulating the RFC. Pl.'s Br., p. 19. "[T]he Court rejects Plaintiff's argument that remand is necessary because the ALJ failed to account for fluctuations in Plaintiff's symptoms. In his decision, the ALJ evaluated the medical evidence and explained his reasoning in determining Plaintiff's RFC." Colston v. Comm'r of Soc. Sec., No. 817-CV-1089, 2018 WL

4520366, at *4 (M.D. Fla. Sept. 21, 2018).  The recent Eleventh Circuit cases Plaintiff cites do not change this analysis, as they are distinguishable and none of them hold that an ALJ must directly address the episodic nature of bipolar disorder under facts such as these.

First, the facts of the cases cited by Plaintiff reflect a significant failure on the part of the ALJ to consider the claimants' bipolar disorder in a meaningful way.  In Schink v. Comm'r of Soc. Sec., the ALJ found the claimant's bipolar disorder to be non-severe, did not "duly consider[] Schink's mental impairment when assessing his RFC," and "the decision contain[ed] no real discussion of how the mental condition affected [claimant's] RFC."  935 F.3d 1245, 1268-69 (11th Cir. 2019).  In Samuels v. Acting Comm'r of Soc. Sec., the ALJ found the claimant's bipolar disorder to be a severe impairment, but "nowhere indicated that medical evidence suggested Ms. Samuels's ability to work was affected by that impairment."  959 F.3d 1042, 1047 (11th Cir. 2020). In Simon v. Comm'r, Soc. Sec. Admin., the ALJ improperly relied on "snapshots" of medical evidence and "isolated entries" in treatment records to discredit a doctor's diagnosis of "a severe combination of bipolar disorder, depression, and anxiety, accompanied by symptoms considerably more serious than those acknowledged by the ALJ."  7 F.4th 1094, 1106 (11th Cir. 2021).

Second, all three of these cases relied on the treating source rule which does not apply to claims filed after March 27, 2017, such as Plaintiff's.  See Harner v. Saul, No. 419-CV-1808, 2021 WL 1208866, at *18 (N.D. Ala. Mar. 31, 2021), aff'd sub nom. Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892 (11th Cir. 2022) (declining to rely on Schink because "the treating physician presumption no longer applies.").

Third, the records in all three of these cases reflected consistent severity or worsening of the claimant's symptoms, not an improvement like that present in Plaintiff's medical records.  See Schink, 935 F.3d at 1267 ("[E]ven if psychotherapy has helped Schink to a certain extent, it is

obvious that he still suffers from serious emotional and interpersonal challenges even after years of counseling sessions. . . ."); Samuels, 959 F.3d at 1044 ("[T]to this day, and despite taking her medication, Ms. Samuels has daily suicidal thoughts."); Simon, 7 F.4th at 1099 (describing medical evidence reporting claimant "'has been in a critical state of mind for several years now,' and his condition 'will only get worse' with time").

Moreover, the Eleventh Circuit recently applied this same reasoning, rejecting reliance on Schink, Simon, and a third case, Castro, in a case applying the revised regulations, stating:

> [The claimant]'s reliance on our decisions in Simon[], Schink[], and Castro v. Acting Comm'r of Soc. Sec., 783 F. App'x 948 (11th Cir. 2019), is misplaced. Most important, each of these decisions involved applications for disability benefits filed before 27 March 2017 and, thus, considered opinion evidence under the treating-physician old rule: a rule inapplicable to [the claimant]'s case. Further – unlike in Schink, where the ALJ concluded that the claimant's bipolar disorder was no severe impairment based on evidence that the claimant's condition improved with treatment – the ALJ here concluded that [the claimant]'s bipolar disorder constituted a severe impairment. See Schink, 935 F.3d at 1267-68.

Vergara v. Comm'r of Soc. Sec., No. 22-11671, 2023 WL 5814433, at *3 n.1 (11th Cir. Sept. 8, 2023). Thus, these cases do not impact the Court's finding that the ALJ's findings are supported by substantial evidence and should be affirmed.

### 3. The ALJ Properly Evaluated the Medical Opinions of Record in Formulating the RFC

Plaintiff's next argument arises from the ALJ's use of medical opinions in formulating the RFC. Specifically, Plaintiff contends the ALJ failed to incorporate Dr. Lyman and Dr. Mendoza's opinions that Plaintiff is unable to adapt or manage himself in the work setting as described by 20 C.F.R. § 12.00(E)(4). See Pl.'s Br., pp. 24-25. As discussed above, the ALJ found Dr. Lyman and Dr. Mendoza's opinions partially persuasive, as they did not formulate their opinions with the benefit of the entire record, and specifically did not review any records created after Plaintiff was abstinent from drugs and alcohol. R. 19-20, 29-20. Plaintiff argues the ALJ omitted the "outcome-

determinative limitations" described by Dr. Lyman and Dr. Mendoza "without any explanation," frustrating meaningful judicial review.  Pl.'s Br., pp. 24-25.

To start, finding a medical opinion persuasive – or, as here, partially persuasive – does not require the ALJ to fully incorporate that opinion into the RFC.  The RFC "is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."  Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012); Nichols v. Kijakazi, No. 320-CV-224, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021) ("The ALJ was under no obligation to adopt verbatim all of [the doctor's] limitations into the RFC.") Indeed, per the regulations, the ALJ cannot defer or give any specific evidentiary weight to any medical opinion.  20 C.F.R. § 416.920c(a).  Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence.  The Court has already rejected Plaintiff's argument that the ALJ improperly considered Dr. Lyman and Dr. Mendoza's opinions, *supra*.   The error described is only in the ALJ's subsequent RFC determination which did not incorporate limitations Plaintiff believes Dr. Lyman and Dr. Mendoza's opinions require.

This evidence provides substantial support for the RFC.  The ALJ did not find Plaintiff could perform all ranges of work with *no* limitations.  The ALJ instead included several non-exertional limitations in the RFC that specifically relate to functional limitation evidence before the ALJ, particularly that which demonstrate Plaintiff's functioning during sobriety.  The RFC limits Plaintiff to simple, routine, repetitive tasks and instructions, occasional interaction with others, occasional changes in workplace environment and routine, and precludes assembly line, piecework, or high production quota work.  There is substantial evidence supporting each of those limitations.

Plaintiff still maintains the RFC does not include some limitations discussed by Dr. Lyman and Dr. Mendoza in that they "opined that Plaintiff is markedly limited in his ability to respond appropriately to changes in the work setting." Pl.'s Br., p. 24. However, as explained, the ALJ does not have to wholly accept a medical opinion "and incorporate into his RFC assessment any and all limitations that source suggests" merely because the ALJ finds that opinion partially persuasive. K.T.B. v. Comm'r of Soc. Sec., No. 320-CV-110, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021). In any event, the RFC accounts for those limitations, although the ALJ disagreed with Dr. Lyman and Dr. Mendoza's assessments that the limitations were marked: Plaintiff is limited to simple, routine, and repetitive tasks, interaction with others is limited, and Plaintiff is subject only to occasional workplace changes under the RFC.

All in all, the RFC is largely consistent with the record evidence, including evidence from Dr. Lyman and Dr. Mendoza. While one could credit the evidence differently to justify adding further limitations in the RFC, that is not the province of the Court. The Court's job is not to review the administrative record *de novo*, but rather is to review the record for substantial evidence to support the Commissioner's factual findings, and if so found, uphold the Commissioner even if the evidence preponderates in favor of the claimant. See Crawford, 363 F.3d at 1158-59; Moore, 405 F.3d at 1211. The RFC here is supported by substantial evidence.

### D.    Plaintiff Is Not Entitled to Sentence Six Remand

In his reply brief, Plaintiff contends he is entitled to remand under sentence six of 42 U.S.C. § 405(g) and attaches to his reply brief a consultative examination and psychological evaluation report signed by Dr. Michael P. Rose dated July 10, 2023, and a reviewing opinion by State Agency consultative psychologist Dr. A. Carter dated July 13, 2023. (Doc. nos. 27-1, 27-2.) These documents post-date the ALJ's decision and the filing of this case, as they

were produced when Plaintiff sought a subsequent disability claim during the time the present claim was under review.  See doc. no. 27, p. 2.

As an initial matter, issues raised for the first time in a reply brief are generally considered untimely.  See McMullins v. Soc. Sec. Admin., Comm'r, No. 22-10462, 2023 WL 2911860, at *2 (11th Cir. Apr. 12, 2023) (unpublished) ("While these arguments appear in the reply brief, that is too late according to our precedents."); United States v. Levy, 379 F.3d 1241, 1244 (11th Cir. 2004) (collecting cases and noting "this Court . . . repeatedly has refused to consider issues raised for the first time in an appellant's reply brief").  However, in an abundance of caution and given the Court's finding, infra, that Plaintiff had good cause not to present this evidence previously, the Court will assess the merits of this argument for the sake of completeness.

Because this evidence was not presented at the administrative level, it cannot be considered by the Court when determining whether the Commissioner's decision is supported by substantial evidence under sentence four of § 405(g).  A reviewing court, when presented with new evidence that was never presented for review at the administrative level, may only consider whether the new evidence necessitates remand under sentence six of § 405(g); a reviewing court may not consider the new evidence in determining whether the Commissioner's final decision is supported by substantial evidence.  Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1267-68 (11th Cir. 2007); Norton v. Comm'r of Soc. Sec., 607 F. App'x 913, 917-18 (11th Cir. 2015) (per curiam); see also Wilson v. Apfel, 179 F.3d 1276, 1278-79 (11th Cir. 1999) (evidence attached to appellant's brief not properly before the court) (citing Cherry v. Heckler, 760 F.2d 1186, 1193 (11th Cir. 1985) (noting general principle that court's review is limited to certified administrative record)); Walters v. Barnhart, 184 F. Supp.2d 1178, 1185 (M.D. Ala. 2001) ("The plaintiff submits to the Court medical records

which she did not present to the ALJ or the Appeals Council in support of her disability claim. These records are not part of the administrative record for review by this court.")

Remand is necessary under § 405(g) only if "(1) there is new, noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986); 42 U.S.C. § 405(g).  Regarding materiality, the new evidence must relate to the time period on or before the date of the ALJ's decision, and there must be a reasonable possibility the new evidence would change the administrative result. Lipscomb v. Comm'r of Soc. Sec., 199 F. App'x 903, 907 (11th Cir. 2006); Archer v. Comm'r of Soc. Sec., 176 F. App'x 80, 82 (11th Cir. 2006).  "In this Circuit, a subsequent favorable disability decision is not newly discovered evidence. . . . Nonetheless, the evidence supporting a subsequent favorable decision may constitute new and material evidence under § 405(g)." Medders v. Soc. Sec. Admin., Comm'r, No. 21-11702, 2022 WL 222719, at *3 (11th Cir. Jan. 26, 2022) (citing Hunter v. Soc. Sec. Admin., Comm'r, 808 F.3d 818, 821 (11th Cir. 2015)), cert. denied sub nom. Medders v. Soc. Sec. Admin., 143 S. Ct. 563 (2023).

The Court notes that nonexistence of evidence during the administrative process may constitute good cause.  See Tolbert v. Colvin, No. 513-CV-1864, 2014 WL 3889476, at *2 n.13 (N.D. Ala. Aug. 4, 2014) (explaining debate on whether nonexistence of evidence always constitutes good cause).  Here, because the new "evidence in question did not exist during the administrative proceedings," Plaintiff has satisfied the good cause requirement.  Tolbert, 2014 WL 3889476, at *2 (collecting cases); see also Archer, 176 F. App'x at 82.  Plaintiff has

nonetheless not satisfied the requisites of sentence six remand because the evidence is not chronologically relevant and, to the extent it could be chronologically relevant, is cumulative.

Plaintiff cannot show the new evidence is material, as it is not chronologically relevant. To be material, evidence must be relevant, and "[f]or new evidence to be relevant, it must relate to the time period on or before the date of the ALJ's decision." Thornton v. Comm'r, Soc. Sec. Admin., 597 F. App'x 604, 614 (11th Cir. 2015). "A record that post-dates the relevant adjudicative period may be chronologically relevant and thus material under certain conditions, such as where the record indicates a retrospective diagnosis based on a review claimant's medical history during the relevant period." Greene ex rel. T.A. v. Comm'r of Soc. Sec., No. 820-CV-2152, 2022 WL 4129541, at *4 (M.D. Fla. Sept. 12, 2022). However, "[e]vidence is irrelevant and immaterial when it relates to a time period after the eligibility determination at issue." Gordon v. Soc. Sec. Admin., Comm'r, 625 F. App'x 512, 514 (11th Cir. 2015) (per curiam); see also Archer, 176 F. App'x at 82 ("Here, whether the evidence related to the time period before the ALJ's determination folds into the issue of materiality."). Moreover, "[w]hile evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, it is not probative of whether the claimant was disabled during the relevant time period under review." Griffin v. Comm'r of Soc. Sec., 723 F. App'x 855, 858 (11th Cir. 2018) (per curiam) (citing Wilson, 179 F.3d at 1279).

Here, the relevant adjudicative period is from April 18, 2019, when Plaintiff applied for benefits, to July 6, 2022, when the ALJ issued his decision. See Moore, 405 F.3d at 1211. The new evidence presented by Plaintiff is based primarily on an assessment and review conducted in July 2023, a year after the ALJ issued his decision. Dr. Rose's report does not specify a date prior

to his assessment that Plaintiff's impairments manifested, but states "[t]his assessment should be viewed as a relatively valid representation of Mr. Slaughter's *current* mental status," (doc. no. 27-1, p. 4 (emphasis added)), and Dr. Carter's subsequent review established a disability onset date of January 3, 2023, (doc. no. 27-2, p. 8).

A recent unpublished[5] Eleventh Circuit case is instructive on this issue:

> We have found chronological relevance when, for example, a petitioner presented post-hearing evidence of a *pre-hearing* surgery that was not previously considered. Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1063 (11th Cir. 2021). And in Washington, we said that doctors who examined patients after the hearing could prepare chronologically relevant notes. 806 F.3d at 1322–23. But we later limited "its holding to the specific circumstances" of that case—to wit, there must be "no evidence of the claimant's mental decline since the ALJ's decision." Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1309 (11th Cir. 2018).

McMullins, 2023 WL 2911860, at *3. Like in McMullins, the new evidence here is not evidence produced prior to the hearing before the ALJ that was not previously considered. The new evidence also reflects evidence of Plaintiff's decline since the ALJ's decision.

For example, the ALJ noted "[i]n May 2022, the claimant reported that he was doing well mentally. The claimant's mental status examination showed that he continued to have a depressed mood, but was otherwise fully oriented, his thought content was appropriate, his insight and judgment were fair, and his memory was good." R. 28 (citations omitted). In contrast, Dr. Rose's July 2023 report notes "about six months ago, [Plaintiff] experienced homicidal ideations," suggesting a decline in Plaintiff's previously documented appropriate thought content and fair insight and judgment. (See doc. no. 27-1, p. 2.) Likewise, the ALJ noted that in February 2022, Plaintiff's "hallucinations persisted, but that they were better," R. 28, while Dr. Rose noted in July 2023 that Plaintiff regularly "has been seeing and hearing

---

[5] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

people that no one else can detect" and feels he is being watched, (doc. no. 27-1, p. 2). Because the new evidence provided was not created prior to the hearing and because it reflects a decline in Plaintiff's condition, it cannot be considered chronologically relevant for the present review.

To the extent the new evidence is arguably chronologically relevant because Dr. Rose and Dr. Carter reviewed records from CSBMG, (doc. no. 27-1, p. 1 ("Additional Sources of Information: progress notes from CSBMG dated from 11/21-3/23")), the clinic where Dr. Dunlap worked, see R. 1012-1159, from the relevant time period before providing the new reports, the evidence is cumulative. The ALJ considered evidence, including the opinions of Dr. Dunlap, Dr. Lyman, and Dr. Mendoza, as discussed above, that relied on the treatment notes Dr. Rose referred to. "Thus, to the extent that this portion of the [new evidence] may relate back to a time on or before the ALJ's decision, it is cumulative of other evidence already considered by the ALJ." Stone v. Soc. Sec. Admin., 658 F. App'x 551, 553 (11th Cir. 2016). Moreover, although Dr. Rose's report notes he had access to the treatment records from CSBMG, his report only references those records in the "Mental Health History" section and does not appear to rely on those records for any of Dr. Rose's findings regarding Plaintiff's condition in July 2023. See doc. no. 27-1. Dr. Carter's review also notes availability of various records, but contains no independent reference to records outside of Dr. Rose's report. See doc. no. 27-2. Thus, there is no indication that Dr. Rose and Dr. Carter's findings are relevant to Plaintiff's limitations before the ALJ's decision on July 22, 2022, and, to the extent they might be, they are cumulative of the evidence discussed at length, *supra*.

In sum, Plaintiff has failed to demonstrate the new evidence produced in July 2023 was material, as it is not chronologically relevant to the current ALJ decision, and noncumulative, as the ALJ reviewed several sources of evidence relying on the same treatment records Dr.

Rose and Dr. Carter had access to during their assessments. Plaintiff has failed to satisfy the requisites of remand under sentence six of § 405(g).

**IV.     CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that Plaintiff's motion for judgment on the pleadings be **DENIED**, (doc. no. 21), the Commissioner's final decision be **AFFIRMED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 10th day of January, 2024, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA